UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KOMANDA LLC,

                 Plaintiff,

       v.

KARTINA CANADA INC.; ONLINE
ETHNIC TV SERVICES, INC.; NASH
DOM, INC.; and JOHN DOES 1 through 10,

                 Defendants.

Case No.: 17-cv-2362

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS KARTINA CANADA, INC. AND ONLINE ETHNIC TV SERVICES, INC.'S MOTION TO DISMISS</u>

Dated:  October 27, 2017
        New York, New York

Respectfully submitted,
MEDENICA LAW PLLC
Olivera Medenica
3 Columbus Circle, 15th Floor
New York, NY 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
Email: Omedenica@medenicalaw.com

*Attorneys for Defendants Kartina Canada, Inc. and Online Ethnic TV Services, Inc.*

## Table of Contents

PRELIMINARY STATEMENT…………………………………………………………...1

STATEMENT OF FACTS………………………………………………………………..2

a)    This Court's Order Addressing Defendants' First Motion to Dismiss…..………………2

b)    Allegations Pertaining to Plaintiff's "Copyrighted Content"…….……………………2

c)    The Absence of Fact-Specific Jurisdictional Allegations over Kartina Canada…..……........3

d)    Kartina Canada is a Canadian Entity Geared to the Canadian Market………………………4

ARGUMENT …………………………………………………………………………...5

I.    The Court Lacks Personal Jurisdiction Over Kartina Canada………………………………5

    A.    Jurisdictional Standard in Copyright Infringement Cases…………………………..5

    B.    Kartina Canada is Not Susceptible to General Jurisdiction in New York………........6

        1.    Under *Daimler* and *Goodyear*, Exercising General Jurisdiction Over Kartina Canada Would Offend Due Process………………………………….....................6

        2.    Kartina Canada Is Not Subject to Jurisdiction Under the C.P.L.R…………..8

            a)    Kartina Canada Is Not "Doing Business" In New York……………8

            b)    Kartina Canada Is a Distinct Corporate Entity, and OETV's Contacts May Not Be Imputed to It……………………………………….......................8

    C.    Kartina Canada Is Not Susceptible to Specific Jurisdiction In New York…………10

    D.    Plaintiff Has Not Made the Requisite Prima Facie Showing of Jurisdiction Entitling It to an Evidentiary Hearing…………………………………………………………11

II.    Plaintiff's Pleadings Should Also Be Dismissed Based Upon *Forum Non Conveniens*……………………………………………………………………………12

    A.    An Adequate Forum Exists……………………………………………………......13

    B.    Private and Public Factors Favor Canada………………………………………13

        1.    The Public Interest Factors Favor Canada………………………………...13

        2.    The Private Interest Factors Favor Canada………………………………...14

III.   The First Amended Complaint Does Not State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………...16

    A.   Plaintiff Fails to Identify the Specific Works that Are the Subject of Its Claim for Copyright Infringement as to Each Specific Defendant…...………………………………16

    1)   Plaintiff's Allegations in the Second Amended Complaint Are Self-Serving and Directly Contradict the First Amended Complaint………………………………………………..16

    2)   Plaintiff's Pleadings Fail to Identify the Works at Issue and Which Specific Defendant Infringed What Specific Works……………………………………………………………..17

    B.   Plaintiff's Claim Pursuant to DMCA 17 U.S.C. §512(f) for Misrepresentation Fails to Plead a Plausible Cause of Action…………………………………………………………21

    C.   Plaintiff's Secondary Copyright Infringement Claim Fails to Plead a Plausible Cause of Action………..…………………………………………………………………………21

    D.   Plaintiff's Claim Pursuant to State Law Is Not a Cognizable Cause of Action……..23

    E.   Plaintiff's Claim Pursuant to DMCA 17 U.S.C. §1201(a)(1) for Unlawful Circumvention Fails to Plead a Plausible Cause of Action………………………….........24

CONCLUSION…………………………………………………………………………...26

**Table of Authorities**

**Cases**

AG v. Wirthlin Worldwide Consulting, LLC,
2014 WL 2727018 (Sup. Ct. N.Y. Cnty. June 13, 2014)…………………………………....................7

Airtran N.Y., LLC v. Midwest Air Grp., Inc.,
46 A.D.3d 208 (1ˢᵗ Dep't 2007)……………………………………………………...........................8

American Dredging Co. v. Miller,
510 U.S. 443 (1994)… ……………………………………………………………………12

Arista Records LLC v. Lime Grp. LLC,
784 F. Supp. 2d 398 (S.D.N.Y., 2011)… ……………………………………………………22

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1954 (2009)… …………………………………………………16

Azby Brokerage, Inc. v. Allstate Ins. Co.,
681 F. Supp. 1084 (S.D.N.Y.1988)… ……………………………………………………..23

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
902 F.2d 194  (2d Cir. 1990)………………………………………………………………11

Beach v. Citigroup Alternative Invs. LLC,
2014 U.S. Dist. LEXIS 30032 (S.D.N.Y., 2014) ……………………………………………………7

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)… ……………………………………………………………………16

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,
786 F. Supp. 182 (E.D.N.Y., 1992), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992))
…………………………………………………………………………………………23

Capitol Records, Inc. v. Kyang Dyi Co.,
2004 U.S. Dist. LEXIS 3305 (S.D.N.Y. 2004)… ……………………………………………..5

Capitol Records LLC v. VideoEgg, Inc.,
611 F.Supp.2d 349 (S.D.N.Y. 2009)… .……………………………………………...............14, 15

Cargo Partner AG v. Albatrans, Inc.,
352 F.3d 41 (2d Cir. 2003) …………………………………………………………………16

Chloe v. Queen Bee of Beverly Hills, LLC,
616 F.3d 158 (2d Cir. 2010)… …………………………………………………………………..5

Cole v. John Wiley & Sons,
2012 U.S. Dist. LEXIS 108612 (S.D.N.Y. 2012)… ……………………………………………..19

Colliton v. Cravath, Swaine & Moore LLP,
2008 U.S. Dist. LEXIS 74388, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008)……………17

Daimler AG v. Bauman,
134 S. Ct. 746 (2014)…………………………………………………………….........6, 7, 8

Delagi v. Volkswagenwerk A.G.,
29 N.Y.2d 426 (1972)… ………………………………………………………………..8

Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.,
2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. 2005)… …………………………………………...10, 15

Deutsche Zentral-Genossenschaftsbank AG v UBS AG,
2014 N.Y. Misc. LEXIS 1858 (2014)… ……………………………………………………8, 9

Dish Network LLC. v. World Cable Inc.
893 F. Supp. 2d 452, 466 (E.D.N.Y. 2012)…………………………………………………..24

Dozier v. Deutsche Bank Trust Co. Ams
2011 U.S. Dist. LEXIS 100467, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011)………………..17

FIM Bank P.L.C. v. Woori Fin. Holdings Co.,
104 A.D.3d 602 (1st Dep't 2013)… ……………………………………………………..8

Fletcher v. Atex, Inc.,
68 F.3d 1451 (2d Cir. 1995)… …………………………………………………..…..14

Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,
443 F.2d 1159 (2d Cir. 1971)…. ……………………………………………...…..22

Goldsmith v. Sotheby's, Inc.,
14 Misc. 3d 1223 (A) (Sup. Ct. N.Y. Cnty., 2007)……………………………………………..9

Goodyear Dunlop Tires Operations, S.A. v. Brown,
131 S. Ct. 2846 (2011).....…………………………………………………………….........6

Gulf Oil Corp. v. Gilbert,
330 U.S. 501 (1947)… …………………………………………………….........13, 14, 15

Hoffriz for Cutlery, Inc. v. Amajac, Ltd.,
763 F.2d 55 (2d Cir. 1985)… ……………………………...………………………...11

I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.
307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004)…………………………………………………..24, 25

In re Roman Catholic Diocese of Albany, N.Y., Inc.,
745 F.3d 30 (2d Cir. 2014) …………………………………………………………..…7

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
230 F. Supp. 2d 403 (S.D.N.Y. 2002)… ……………………………………………...9

Int'l Shoe Co. v. Washington,
326 U.S. 310 (1945)… ………………………………………………………………..6

Itar-Tass Russian News Agency v. Russian Kurier, Inc.
153 F.3d 82, 91 (2d Cir., 1998)……………………………………………………….20

Jazini by Jazini v. Nissan Motor Cor.,
148 F.3d 181 (2d Cir. 1998) …………………………………………………………12

Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC et al,
2017 U.S. Dist. LEXIS 22548 (S.D.N.Y. 2017) …………………………………….19, 24

Kelly v. L.L. Cool J,
145 F.R.D. 32 (S.D.N.Y. 1992)…. …………………………………………………...18

Laine v. Pride,
2010 U.S. Dist. LEXIS 3657 (S.D.N.Y., 2010)… ……………………………………22

Lambertini v. Fain,
2014 U.S. Dist. LEXIS 131390 (E.D.N.Y. Sept. 17, 2014)… ……………………………..19

LBB Corp. v. Lucas Distrib.,
2008 U.S. Dist. LEXIS 53752 (S.D.N.Y. 2008)… …………………………………….23, 24


LivePerson, Inc. v. 24/7 Customer, Inc.,
83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015) ……………………………………………24

Master Sound Int'l, Inc. v. PolyGram Latino U.S.,
1999 U.S. Dist. LEXIS 6287 (S.D.N.Y. May 4, 1999)…. ……………………………………19

Cf. Metro Life Ins. Co. v. Robertson-Ceco Corp.,
84 F.3d 560, 568 (2d Cir. 1996)………………………………………………………..7

MGM Studios, Inc. v. Grokster, Ltd.,
545 U.S. 913 (2005)… …………………………………………………………....22

Palmieri v. Estefan,
793 F. Supp. 1182 (S.D.N.Y. 1992)… …………………………………………………..8

Perkins v. Benguet Consol. Mining Co.,
342 U.S. 437 (1952)… ………………………………………………………………..7

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981)… ……………………………………………………………………12, 13

Quinn-Brown Publishing Corp. v. Chilton Co.
15 F. Supp. 213, 214 (S.D.N.Y. 1936)……………………………………………………..20

Rams v. Def Jam Recordings, Inc.,
2016 U.S. Dist. LEXIS 111803 (S.D.N.Y. 2016)… …………………………………………22

Refco Grp. Ltd., LLC v. Cantor Fitzgerald, LP,
2014 U.S. Dist. LEXIS 79708 (Sup. Ct. N.Y. Cnty., 2010)……………………………………9

Reich v. Lopez,
38 F.Supp.3d 436 (S.D.N.Y., 2014) ………………………………………………………...8

Securitron Magnalock Corp. v. Schnabolk,
65 F.3d 256  (2d Cir. 1995)… ……………………………………………………………..23

Sonera Holding B.V. v. Cukurova Holding, A.S.,
750 F.3d 221 (2d Cir. 2014)… ……………………………………………………………..8

Soviet Pan Am Travel Effort v. Travel Committee, Inc.,
756 F. Supp. 126 (S.D.N.Y. 1991)… …………………………………………………….....14

United Feature Syndicate, Inc. v. Miller,
216 F. Supp. 2d 198 (S.D.N.Y. 2002)… …………………………………………………….14

Universal City Studios, Inc. v. Reimerdes
111 F. Supp. 2d 294, 319 (S.D.N.Y. 2000)………………………………………………....25

Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry,
583 F. Supp. 2d 461 (S.D.N.Y. 2008)… …………………………………………………..15

Visual Footcare Techs., LLC v. Cfs Allied Health Educ., LLC,
2014 U.S. Dist. LEXIS 25487 (S.D.N.Y., 2014)… …………………………………………8

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
751 F.2d 117 (2d Cir. 1984) ………………………………………………………………..9

Walden v. Fiore,
134 S. Ct. 1115 (2014)……………………………………………………………….........6

Wallace v. N.Y.C. Dep't of Corr.,
1996 U.S. Dist. LEXIS 22368, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)), aff'd, 356 F. App'x
535 (2d Cir. 2009)…………………………………………………………………………17

Wave Studio, LLC v. General Hotel Mgmt.,

2017 U.S. Dist. LEXIS 34797 (S.D.N.Y. 2017)…. …………………………………………………15

## Statutes

C.P.L.R. §301…………………………………………………………………………………..5, 8, 10
C.P.L.R. §302………………………………………………………………………………………..6
Fed. R. Civ. P. 11……………………………………………………………………………………13
17 U.S.C. §104(c)……………………………………………………………………………………20
17 U.S.C. §512(f)…. ……………………………………………………………...............20
17 U.S.C. §512(g)(2)(c)…. …………………………………………………………………………25
28 U.S.C.A. §1400(a)…. …………………………………………………………………….....7
17 U.S.C. §1201(a)(1)………………………………………………………………………...24

## Other Pleadings

Compl., Am. Broad. Cos., Inc. v. AEREO, Inc., No. 12-CV-1540 (S.D.N.Y. Mar. 1, 2012)…........19
Compl., WNET v. AEREO, Inc., No. 12-CV-1543 (S.D.N.Y. Mar. 1, 2012)…………………...19
Compl., WPIX, Inc. v. ivi, Inc., No. 10-CV-7415 (S.D.N.Y. Sept. 28, 2010)………………………19

## PRELIMINARY STATEMENT

Defendants Kartina Canada, Inc. ("Kartina Canada") and Online Ethnic TV Services, Inc. ("OETV") (collectively, "Defendants") bring this motion seeking dismissal pursuant Fed. R. Civ. P. 12(b)(2), (3) and (6) as to copyright infringement, secondary copyright infringement, misrepresentation under the Digital Millenium Copyright Act ("DMCA"), unlawful circumvention and unfair and deceptive trade practices against Defendants for (1) lack of personal jurisdiction over Kartina Canada, (2) improper venue, and (3) insufficient pleading and failure to state a claim upon which relief can be granted.

This is a case in which a Russian plaintiff is attempting to haul into a New York court two Canadian entities,[1] for purportedly infringing acts that occurred in Canada, and for injuries sustained in Russia, in order to enforce certain unspecified contractual rights Plaintiff claims it has under Russian law in certain unspecified copyrighted works.  Not only is the relationship to New York tenuous at best, but after giving it a try in three separate pleadings, Plaintiff still cannot be bothered to properly plead jurisdiction over Kartina Canada or what specific works were purportedly infringed by any specific Defendants, and when.

The lack of specificity in Plaintiff's pleading is remarkable for its deliberateness.  Represented by sophisticated counsel, who dealt with precisely the same issues in another proceeding before this Court,[2] Plaintiff is fundamentally unable to allege the basic elements of its claims - all information that is uniquely and exclusively within Plaintiff's purview.  Plaintiff's remaining claims are either improperly pled or implausible.

---

[1] Plaintiff no longer names Gennady Beyn, a Canadian national, as a defendant.

[2] It is our understanding that Plaintiff's counsel previously represented Canadian based defendant Matvil Corporation d/b/a eTVnet, and its CEO Mikhail Gayster, a competitor of Defendants OETV and Kartina Canada, before this very same Court within the last year – also on a copyright infringement matter.  See Joint Stock Company v. Infomir LLC et al (16-cv-1318).

Accordingly, for the foregoing reasons, and as explained in more detail below, Plaintiff's Second Amended Complaint is tenuous at best and should be dismissed in its entirety.

**Statement of Facts**

a)     _This Court's Order Addressing Defendants' First Motion to Dismiss_

Defendants filed a motion to dismiss on June 23, 2017 for, _inter alia_, failure to properly plead what copyrighted works are at issue in the present proceeding.  See Memorandum of Law in Support of Defendants Kartina Canada, Inc., Online Ethnic TV Services, Inc., and Gennady Beyn's Motion to Dismiss, dated June 23, 2017 (Docket #36) ("First Motion to Dismiss").  On September 21, 2017, this Court issued an Order finding that Plaintiff had failed to plead copyright ownership and infringement as to all defendants, and failed to plead jurisdiction over Kartina Canada.  Declr. of Olivera Medenica, dated Oct. 27, 2017, Ex. A (the "Order").  This Court granted Plaintiff a final chance to re-plead and:

1. Allege plausible facts regarding plaintiff's ownership of **_specific_**, **_enumerated_** copyrights for which plaintiff is seeking relief in this action;

2. Allege specific, plausible facts regarding the **_particular copyrighted works_** that **_each_** **_individual defendant_** is alleged to have infringed, including **_how_** and **_when_** the infringement allegedly occurred;

3. Allege **_specific_**, plausible facts regarding the Court's jurisdiction over **_each_** **_individual defendant_** named in this action.

OM Declr., Ex. A, at 2 (emphasis added).

b)     _Allegations Pertaining to Plaintiff's "Copyrighted Content"_

On October 6, 2017, almost seven months after its original pleading, Plaintiff filed its Second Amended Complaint ("SAC").  OM Declr, Ex. B (SAC).  In it, Plaintiff alleges that it owns "exclusive rights in the Copyrighted Content" (SAC, ¶11).  In a drastic departure from Plaintiff's First Amended Complaint (OM Declr. Ex. C ("FAC")), Plaintiff now alleges that this Copyrighted Content "include[s], **_without limitation_**, **_all_** single productions and recurring episodes produced on or before

December 31, 2016 of the programs distributed under the following names" – and it enumerates the title of ten programs in Latin and Cyrillic alphabet.[3] SAC ¶10.

Plaintiff also alleges that "all of the Copyrighted Content originally vested upon creation in Red Square" (SAC ¶13), and that "[a]ll exclusive rights in the Copyrighted Content were, in accordance with Russian law, transferred to Komanda after the works were created and such transfers have occurred ***on a regular basis***." SAC ¶11.

Plaintiff alleges that the last of such transfer agreements occurred "on February 1, 2017" (SAC ¶15) and that it included "53 episodes of Let's Get Married"[4] and "other content, including all 10 of the programs that comprise the Copyright Content." SAC ¶¶15-16. In paragraph 26 of its SAC, Plaintiff lists the infringement date and identifies certain episodes of certain programs that were purportedly infringed by Defendants, but does not allege how/when it acquired the rights to each such episode. SAC, ¶26.

c)  *The Absence of Fact-Specific Jurisdictional Allegations over Kartina Canada*

Plaintiff alleges that on March 17, 2017 Beyn "on behalf of Kartina Canada" submitted a counter-notice (the "Counter-Notice") to Plaintiff's take down notice. SAC ¶39. Plaintiff alleges that Beyn identified himself as the designated agent of Best Russian TV's Roku, Inc. channel (the "BRT Channel") – the channel that Plaintiff claims contained infringing content. Id. The Counter-Notice is addressed to Roku, Inc.'s ("Roku") headquarters in San Francisco, California. SAC, Ex 2; see also Declaration of Gennady Beyn ("GB") dated October 27, 2017, at ¶20, Ex. A. The Counter-Notice further states that its author submits to the jurisdiction of the Northern District of California. Id.

---

[3] Defendants note that Plaintiff has had striking difficulties pinning down the titles of the programs it purportedly owns. In its initial pleading, Plaintiff names six titles, and in the FAC, it names eleven. Now, seven months after the initial pleading, Plaintiff can name only ten. Again, this pertains to information that is solely within Plaintiff's knowledge and control.

[4] Plaintiff translates Let's Get Married as *Davai pogenimnsya*. SAC ¶14.

Plaintiff further alleges that on May 1, 2017 Beyn sent an almost identical correspondence to Roku withdrawing the Counter-Notice and submitting a revised counter-notice "on behalf of OETV" (the "Corrected Counter-Notice").[5]  SAC ¶42; GB ¶22, Ex. B.  In it, Beyn identifies himself as the "representative of the entity identified in the Notice of Alleged Copyright Infringement dated March 15, 2017 and referring to content located at: Roku channel BRT [i.e. BRT Channel]".  SAC ¶42, Ex. 4.  Plaintiff further alleges that both counter-notices deny Plaintiff's accusation of infringement.  SAC ¶¶39, 42.  The Corrected Counter-Notice is addressed to Roku's headquarters in San Francisco, California.  SAC ¶42, Ex. 4.  The Corrected Counter-Notice also states that its author submits to the jurisdiction of the Northern District of California.  Id.

Plaintiff concedes that Kartina Canada and OETV are entities organized under the laws of Canada with a principal place of business in Toronto, Ontario.  SAC ¶¶3, 4.

Plaintiff further alleges that "some time after being incorporated in June 2016, Kartina Canada became an active participant in the infringement of the Copyright Content."  SAC, ¶32.  Plaintiff also alleges that the same content available on BestRussianTV.com can be viewed on KartinaCanada.com (SAC ¶32-33), but does not allege when such content was made available, nor whether it can be, or was, viewed by a subscriber in this jurisdiction, nor does Plaintiff allege whether Kartina Canada deliberately targeted its services to subscribers within this jurisdiction, nor does Plaintiff allege the basis of its belief that KartinaCanada.com is owned by Kartina Canada.

d)      _Kartina Canada is a Canadian Entity Geared to the Canadian Market_

Organized under the laws of Canada and Ontario, with a principal place of business in Toronto, Kartina Canada is a company that only recently has opened for business – and as its name suggests, it is geared towards the Canadian market.  GB ¶¶9-14.  It is a company that offers "ethnic"

---

[5] Since a motion to dismiss goes solely to the pleadings, the reasons underlying this correction are beyond the scope of the present motion.  That being said, the reason for the correction is self-evident:  Beyn identified the wrong entity.  See GB, at ¶¶20-22.

television over the internet to its subscribers – in other words, programs from TV channels from

Russia, Ukraine and other CIS countries.  GB ¶12.  A new subscriber to Kartina Canada is unable to

gain access to Kartina Canada's services if based outside of Canada.  GB ¶13.  Kartina Canada does

not market to the United States market, currently has no plans to do so, and most likely never will.[6]

GB ¶13.  Furthermore, Kartina Canada is a company that is separate and distinct from OETV.[7]  GB

¶¶15-18.

## ARGUMENT

## I.      The Court Lacks Personal Jurisdiction Over Kartina Canada

## A.      Jurisdictional Standard in Copyright Infringement Cases

Copyright actions may be instituted in the federal district court in the judicial district "in which

the defendant or his agent resides or may be found."  28 U.S.C.A. §1400(a).  It is well established that

a defendant may be found "in any district in which he is amenable to personal jurisdiction; thus venue

and jurisdiction are coextensive."  Capitol Records, Inc. v. Kyang Dyi Co., 2004 U.S. Dist. LEXIS

3305 (S.D.N.Y. 2004).  Personal jurisdiction exists if the defendant is amenable to service of process

under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny

the defendant due process.  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir.

2010).

Under C.P.L.R. §301, a corporate defendant may be subject to general jurisdiction by virtue

of its physical presence, domicile, consent, or by "doing business" in New York.  C.P.L.R. §301.

---

[6] Kartina Canada is not licensed to do business in New York, neither owns nor leases property of any kind in New York, does not maintain an office or any other facility in New York, does not have permanent, or temporary, employees in New York, has no mailing address or telephone listing in New York, has no bank accounts or other assets located in New York, does not file tax returns in New York, maintains no records in New York, and does not have a designated agent for service of process in New York.  GB ¶14.

[7] Kartina Canada maintains its own books, records, and financial accounts that are separate from OETV.  GB ¶15.  Kartina Canada and OETV each has a Board of Directors that holds separate meetings and maintains separate minutes of such meetings.  GB ¶16.  OETV does not guarantee Kartina Canada's corporate obligations or liabilities.  GB ¶17.  OETV does not advance loans or extend credit to Kartina Canada.  GB ¶18.

Additionally, due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). As the U.S. Supreme Court has recently held, the minimum contacts test requires that a corporate defendant have "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home" in that state. Daimler AG v. Bauman, 134 S. Ct. 746, 761 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)).

New York's long-arm statute, found in C.P.L.R. §302, provides that a nonresident defendant is subject to specific jurisdiction in New York where, for example, it transacts business in the state and the cause of action arises out of that transaction, or where the defendant commits a tort outside the state that causes injury in the state. See C.P.L.R. §302(a)(1), (3). In all events, for the exercise of specific jurisdiction to comport with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

**B.    Kartina Canada is Not Susceptible to General Jurisdiction in New York**

**1.    Under *Daimler* and *Goodyear*, Exercising General Jurisdiction Over Kartina Canada Would Offend Due Process**

Kartina Canada is plainly not subject to general jurisdiction in New York because it lacks the minimum contacts with New York necessary to satisfy the Fourteenth Amendment's Due Process Clause. Under no circumstances may it be said that Kartina Canada's affiliations with New York are so "continuous and systematic" as to render it essentially "at home" in the state. Under Daimler and Goodyear, absent exceptional circumstances, a nonresident corporation is "at home" where it (1) is incorporated or (2) has its principal place of business. See Daimler, 134 S. Ct. at 761 & n. 19; see also id.at 760 ("Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable.")[8] As Plaintiff itself admits, Kartina Canada is both

---

[8] The Supreme Court has stated that jurisdiction may also exist in the rare case where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." Daimler, 134 S. Ct. at 761 n. 19. It has suggested that this may be true where, for instance, a defendant maintains a "principal, if temporary place of business" in the forum state. See id.at

organized under the laws of, and has its principal place of business in, Canada.  SAC. ¶3; see also GB ¶9.  Kartina Canada is therefore plainly "at home" in Canada – not in New York.  See Daimler, 134 S. Ct. at 760-61.

The New York courts' application of Daimler further confirms that Kartina Canada is not "at home" in New York.  In AG v. Wirthlin Worldwide Consulting, LLC, Index No. 653427/2012, 2014 WL 2727018 (Sup. Ct. N.Y. Cnty. June 13, 2014), the Court dismissed a complaint where the defendant's presence in New York "consist[ed] merely of having a New York mailing address and a New York phone number" – which were insufficient to render it "at home" in the state.  Id.  Here, Kartina Canada maintains fewer New York contacts than even the defendant in Wirthlin.  As noted above, it has no mailing address or telephone listing in New York.  See GB ¶¶13-14.  It does not own or lease any property, maintain an office (or any records or permanent or temporary employees, for that matter), nor possess any bank accounts or other assets in New York.  Id.  It is therefore plainly not "at home" here.  See Wirthlin, 2014 WL 2727018; see also In re Roman Catholic Diocese of Albany, N.Y., Inc., 745 F.3d 30, 38-39 (2d Cir. 2014) (defendant not "at home" in Vermont because it was incorporated in and had its principal place of business in New York, its "operations [were] almost entirely limited to New York," and "it [did] not own any real property, maintain an office, or possess any bank accounts in Vermont"); Beach v. Citigroup Alternative Invs. LLC, 2014 U.S. Dist. LEXIS 30032 (S.D.N.Y., 2014) (defendant was not "at home" in New York where it was "incorporated under the laws of the United Kingdom with its principal place of business there and is not registered to do business in New York" and "has no office or employees in New York, or any other systematic and continuous presence here").[9]

---

756 (discussing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)).  Kartina Canada does not come close to meeting this exception.  Indeed, as explained below, Kartina Canada has absolutely no contacts to New York, and therefore cannot be considered to have contacts that are "substantial" or considered "at home" there.

[9] Given that Kartina Canada plainly fails the minimum contacts test, there is no need to consider whether exercising jurisdiction over Kartina Canada would be "reasonable" – which, in any event, it most certainly would not.  Cf. Metro Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

2.      **Kartina Canada Is Not Subject to Jurisdiction Under the C.P.L.R.**

(a)     **Kartina Canada Is Not "Doing Business" In New York**

Even assuming, contrary to law or fact, that federal due process requirements were satisfied, Kartina Canada would still not be subject to general jurisdiction in this Court because such a finding would be flatly inconsistent with New York's jurisdictional statute.  Under C.P.L.R. §301, a foreign corporation such as Kartina Canada is subject to suit in New York only if it is "doing business" here. Airtran N.Y., LLC v. Midwest Air Grp., Inc., 46 A.D.3d 208, 216-217 (1st Dep't 2007).  For Kartina Canada to be "doing business" in New York, it must do so "not occasionally or casually, but with a fair measure of permanent and continuity."  Id. at 216 (internal quotations omitted).[10]

Kartina Canada is not even licensed to conduct business in the state.  GB ¶14.  It does not file tax returns in New York, has never designated agents for service of process in New York, and has no mailing address or telephone listing in the state.  Id.  Under these circumstances, Kartina Canada plainly is not "doing business" in New York.  See e.g., Delagi v. Volkswagenwerk A.G., 29 N.Y.2d 426, 432-33 (1972); FIM Bank P.L.C. v. Woori Fin. Holdings Co., 104 A.D.3d 602, 602 (1st Dep't 2013); see also Visual Footcare Techs., LLC v. Cfs Allied Health Educ., LLC, 2014 U.S. Dist. LEXIS 25487, *14 (S.D.N.Y., 2014).

(b)     **Kartina Canada Is a Distinct Corporate Entity, and OETV's Contacts May Not Be Imputed to It**

Historically, New York courts have, under limited circumstances, exercised jurisdiction over related entities.[11]  Courts consider three factors in determining whether the control exercised by the

---

[10] As an initial matter, because a corporate defendant may be "doing business" in New York without being "at home" in the state, both New York courts and the U.S. Court of Appeals for the Second Circuit have acknowledged that New York's "doing business" test may be inconsistent with Daimler and, for that reason, have questioned its constitutional validity. See Sonera Holding B.V. v. Cukurova Holding, A.S., 750 F.3d 221, 224 n.2 (2d Cir. 2014); Reich v. Lopez, 38 F.Supp.3d 436, 454 (S.D.N.Y., 2014); Wirthlin, 2014 WL 2727018; Deutsche Zentral-Genossenschaftsbank AG v UBS AG, 2014 N.Y. Misc. LEXIS 1858, *11 (2014).  The constitutionality of this test notwithstanding, Kartina Canada does not come close to conducting continuous and permanent activity in New York for the same reasons articulated above.

[11] For example, where the parent's control over the subsidiary's activities is "so complete" that the subsidiary is, in fact, a "mere department" of the parent.  Delagi, 29 N.Y.2d at 432.  This test, however, is narrowly applied.  Palmieri v. Estefan, 793 F. Supp. 1182, 1187 (S.D.N.Y. 1992).  However, just as Daimler has cast doubt over the "doing business" test, it has also brought into question the constitutionality of the "mere department" test, as the 'the 'mere department' test is a means

parent corporation renders its subsidiary a "mere department": (1) the extent of the subsidiary's financial dependence on the parent; (2) the degree of parental interference in the selection and assignment of the subsidiary's executive personnel and the failure to observe corporate formalities; and (3) the degree of control exercised by the parent over the subsidiary's marketing and operational policies.  See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir. 1984); accord Goldsmith v. Sotheby's, Inc., 14 Misc. 3d 1223 (A) (Sup. Ct. N.Y. Cnty., 2007).

Plaintiff has pled absolutely no facts in its pleading indicating that it seeks to have this Court exercise jurisdiction over Kartina Canada on this basis.  Plaintiff simply alleges that Gennady Beyn identified himself as a representative of both Kartina Canada and OETV, that both entities have the same physical address in Canada.  SAC ¶¶3-4.  Plaintiff further alleges that two *websites*, BestRussianTV.com and KartinaCanada.com, offer the same content, and that subscribers to one were given the *option* of joining the other.  SAC ¶32-33.  The remaining allegations throughout Plaintiff's pleadings merely lump all defendants in the deliberately uninformative descriptor of "BRT Defendants" and "Infringing Defendants."

There are, however, absolutely no fact specific allegations that the two Canadian *entities* are "mere departments" of each other, or that one entity needs to be disregarded to reach the other. Plaintiff could not in any event allege such control.  As the declaration of Gennady Beyn, submitted herewith, evinces, OETV and Kartina Canada are independent corporate entities.[12]

---

of establishing general jurisdiction under New York law, which may not be fully consistent with the constitutional principles articulated in Daimler."  Refco Grp. Ltd., LLC v. Cantor Fitzgerald, LP, 2014 U.S. Dist. LEXIS 79708 (Sup. Ct. N.Y. Cnty., 2010); Deutsche Zentral-Genossenschaftsbank AG v UBS AG, 2014 N.Y. Misc. LEXIS 1858 (2014).

[12] Beyn's declaration demonstrates that Kartina Canada neither relies upon OETV for financial support, nor commingles its financial assets or records with OETV in any way that would indicate dependence thereupon.  GB ¶¶15-18; Goldsmith v. Sotheby's, Inc., 14 Misc. 3d 1223(A) (subsidiary independent where it, inter alia, "maintain[ed] its own books, records, and financial accounts separate and apart from any affiliated company").   Beyn's declaration further demonstrates that each entity maintains its own Board of Directors and maintains separate minutes of such meetings. GB ¶¶15-16; see In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002)(parent and subsidiary had "independent boards of directors;" conducted "separate board meetings and maintain[ed] separate minutes of such meetings;" kept "separate books, records, and financial accounts").

For all these reasons, Kartina Canada is not subject to jurisdiction pursuant to C.P.L.R. §301 based upon any contacts that OETV may have with New York.

**C.     Kartina Canada Is Not Susceptible to Specific Jurisdiction in New York**

As noted above, for the exercise of specific jurisdiction to comport with both New York's long-arm statute and federal due process requirements, the defendant must have performed some act, or caused some injury, in the forum state out of which the plaintiff's cause of action arose.  The tort of copyright infringement, however, causes injury in the state where the allegedly infringed intellectual property is held, <u>see</u>, <u>e.g.</u>, <u>Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.</u>, 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. 2005), in this case Russia, and not New York.  SAC ¶¶11-18.  As Plaintiff concedes, it is a Russian entity, purportedly holding Russian copyrights – the connection to New York is therefore nonexistent.  <u>Id.</u>

Furthermore, Kartina Canada engaged in no conduct whatsoever – either within or outside New York – that is related to Plaintiff's claims.  It bears repeating that Kartina Canada is a newly launched company, based in Canada, whose sole purpose is to deliver Russian language programming to Canadian consumers.  GB ¶13.

Plaintiff's assertion of jurisdiction over Kartina Canada is limited to: (1) an erroneous Counter-Notice signed by Beyn, citing to a Kartina Canada business address, which was subsequently corrected and resubmitted on behalf of OETV; and (2) vague allegations that two websites are similar to each other, and/or have the same subscribers for their services.

With respect to the notice, there are no "dueling" notices; rather, it is one person correcting an error made in a prior notice authored by him.  The fact of the matter is that the notice itself does not, and never will, provide a basis for jurisdiction; either Kartina Canada has done business in New York or it has not, the notice is irrelevant to this analysis.  Indeed, Defendant could have made the very same argument without the benefit of a corrected notice.

With respect to these websites, Plaintiff fails to connect the dots between its allegation and its assertion of jurisdiction.  Whether two websites are similar, or one invites subscribers of one to join the other, or one looks like the other, or one offers the similar or identical content is absolutely uninformative as to whether this Court should exercise jurisdiction over a foreign based defendant with no New York assets or presence.  This is particularly so given the fact that Plaintiff is fundamentally unable to allege a single instance of infringement specific to Kartina Canada, and fundamentally unable to formulate any fact specific allegations tying Kartina Canada to New York, the United States, or *any* specific geographic location aside from Toronto for that matter.

Plaintiff's pleadings are therefore wholly devoid of factual allegations establishing jurisdiction over Kartina Canada.  Absent any evidence supporting jurisdiction, the Second Amended Complaint should be dismissed against Kartina Canada.

## D.     Plaintiff Has Not Made the Requisite Prima Facie Showing of Jurisdiction Entitling It to an Evidentiary Hearing

For all the reasons stated above, Plaintiff has also fundamentally failed to allege a *prima facie* showing of jurisdiction entitling it to an evidentiary hearing.  The Second Circuit has repeatedly held that "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, see Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction," i.e. by making a "prima facie showing" of jurisdiction.  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990); Hoffriz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985);

Plaintiff did not make a *prima facie* showing that this Court has jurisdiction over Kartina Canada.  Plaintiff's conclusory statements fail to address Kartina Canada in particular, and inexplicably lump Kartina Canada into the uninformative "BRT Defendants" and "Infringing Defendants" label.  All that Plaintiff has managed to allege is the existence of the Counter-Notice, which it simultaneously concedes Defendants have represented was erroneously submitted, and vague allegations purportedly linking two websites.

If Plaintiff's allegations were sufficient to establish a *prima facie* case of jurisdiction over Kartina Canada, a foreign company, and thus subject the latter to discovery, "it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue." Jazini by Jazini v. Nissan Motor Cor., 148 F.3d 181 (2d Cir. 1998).  This means that federal courts in this district would engage in substantial jurisdictional discovery – which in the case of a foreign corporation, as here, could prove burdensome and expensive – based upon little else than Plaintiff's conclusory non-fact specific jurisdictional allegations.[13]  Plaintiff is not without recourse, it can avail itself of Canadian copyright jurisprudence in a Canadian court.

## II.     Plaintiff's Pleadings Should Also Be Dismissed Based Upon *Forum Non Conveniens*

For many of the same reasons articulated in Section I above, this Court should dismiss this action against Defendants based on the common law doctrine of *forum non conveniens*.  Under this doctrine, courts have broad discretion to decline jurisdiction in favor of a more convenient forum outside the United States.  American Dredging Co. v. Miller, 510 U.S. 443, 448 (1994).  Furthermore, where the Plaintiff is a foreign national or entity, as here, Plaintiff's choice of forum is accorded less deference.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981) ("Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.")

A party moving to dismiss on grounds of *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2) that the balance of private and public interest factors weighs in

---

[13] Consider the implications where a foreign Plaintiff purportedly holding an unregistered foreign "copyright" (where neither the episodes nor programs are fully identified) can merely allege conclusory non-fact specific jurisdictional allegations over a foreign competitor with no contacts in New York, haul them in for a deposition, and gain access to their books and records – just because they feel like it.  The result is absurd and runs contrary to precedent in this Circuit and constitutional due process considerations.

favor of dismissal.  Piper Aircraft, 454 U.S. at 238.  Each of these elements is readily established in this case.

## A.     An Adequate Alternative Forum Exists

The threshold inquiry is whether there is an adequate alternative forum available for adjudication.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, at 506-507 (1947).  The requirement of an adequate alternative forum is usually satisfied if the defendant is amenable to service of process in the other jurisdiction.  Piper Aircraft, 454 U.S. 235, 254 (1981).  A proposed forum is deemed unavailable only if its law effectively denies the plaintiff any remedy whatsoever.  The fact that substantive law in the alternative forum is less favorable is irrelevant unless the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all."  Piper, 454 U.S. at 254.

Assuming Plaintiff has any viable claims at all against Defendants, it cannot be disputed that Canada provides a valid forum for deciding those claims.  Indeed, Canada is a party to the Berne Convention, and as a result Plaintiff (a purported Russian copyright holder) would receive the same treatment a Canadian national would receive pursuant to Canada's Copyright laws.  Plaintiff is therefore not without recourse outside of the United States, and under Canadian law.

## B.     Private and Public Interest Factors Favor Canada

Once an alternative forum is identified, a dismissal based upon *forum non conveniens* requires a balancing of public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action. See Gilbert, 330 U.S. at 508-09.

### 1.     The Public Interest Factors Favor Canada

The public interest factors enumerated in Gilbert and summarized in Piper Aircraft include: the administrative difficulties flowing from court congestion; the local interest in having controversies decided at home; the interest in having the trial in a forum that is familiar with the law governing the action; the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.  Piper Aircraft, 454 U.S.

at 241 n.6 (citing Gilbert, 330 U.S. at 509).  These factors weigh strongly in favor of dismissal on *forum non conveniens* grounds.

Witnesses are located in Canada, and the entities at issue are governed by Canadian law. Interpretation of Canadian laws would require Canadian experts, that this Court take judicial notice of Canadian law, or engage in complex choice of law issues.[14]  This is especially problematic when the federal court system is already congested.  The Supreme Court noted that "[a]dministrative difficulties follow for courts when litigation is piled up in congested centers. . ." Gilbert, 330 U.S. 501, 508 (1947).

The events that gave rise to this litigation took place in Canada, not New York, and the party who control the BRT channel at Roku, or the www.BestRussianTV.com website is located in Canada, not New York.   See Capitol Records LLC v. VideoEgg, Inc., 611 F.Supp.2d 349 (S.D.N.Y. 2009) ("[t]he operative facts in infringement cases usually relate to the design, development and production of an infringing product").[15]

It would be an inefficient use of judicial resources for this case to proceed in New York; public interest factors therefore weigh in favor of Canada.

## 2.      The Private Interest Factors Favor Canada

The relevant private interests set forth in Gilbert include the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of

---

[14] Should this case proceed, Defendants anticipate Plaintiff to argue that OETV's corporate form should be disregarded to reach the assets of Kartina Canada, or the reverse.  New York courts, however, have repeatedly held that the law of the state of incorporation determines when the corporate form will be disregarded – which in the present case, is Canada.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); United Feature Syndicate, Inc. v. Miller, 216 F. Supp. 2d 198, 215 (S.D.N.Y. 2002); Soviet Pan Am Travel Effort v. Travel Committee, Inc., 756 F. Supp. 126, at 131 (S.D.N.Y. 1991)("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.")  Defendants would therefore request that this Court take judicial notice of Canadian law, which would necessitate the parties to retain experts on the subject matter, and this Court to potentially hold a hearing should expert opinions differ.

[15] Furthermore, both the channel and the website are accessible worldwide, and there is no nexus to New York that Plaintiff has articulated, or could plausibly articulate, with New York.  Indeed, the Takedown Notice and Counter-Notice was directed to Roku, a company based in San Francisco, California, and the Counter-Notice specifically states that its author "consent[s] to the jurisdiction of the United States District Court located in the Northern District of California" and not New York.  SAC, Ex. 2, Ex. 3.

14

obtaining attendance of willing witnesses; and all other practical problems that make trial of a case easy, expeditious, and inexpensive -- or the opposite. Issues concerning the enforceability of a judgment should also be considered.  Gilbert, 330 U.S. at 508.

Where, as here, the majority of witnesses and documents are located in an alternative forum, the action should be dismissed.  Plaintiff alleges that the allegedly wrongful conduct engaged in by defendants took place in and from Canada and that the primary harm (i.e. loss of licensing revenues) Plaintiff suffered was suffered in Russia.  FAC ¶¶9-11, 13, 18-19; see Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. 2005) (tort of copyright infringement causes injury in the state where the allegedly infringed intellectual property is held); Capitol Records LLC, 611 F.Supp.2d 349 (S.D.N.Y. 2009) ("[t]he operative facts in infringement cases usually relate to the design, development and production of an infringing product").

Plaintiff alleges that OETV and Kartina Canada own the purportedly infringing website of BestRussianTV.com, the creation and management of which would have occurred in Canada.  FAC ¶¶10-11.  Plaintiff also seeks to hold OETV and Kartina Canada liable based upon "aiding and abetting" secondary infringements by "contributing" to such infringement.  FAC ¶¶71-78.  Yet, these acts, or omissions, that would have created or not created such alleged relationships, by definition, also would have occurred in Canada, where Kartina Canada and OETV are located.

Even if the case centers on Plaintiff's purported ownership of such copyrights, the relevant analysis would take place under Russian law based upon evidence located Russia, and not New York law or New York evidence.  Wave Studio, LLC v. General Hotel Mgmt., 2017 U.S. Dist. LEXIS 34797 (S.D.N.Y. 2017), quoting Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry, 583 F. Supp. 2d 461 (S.D.N.Y. 2008)("[w]hen determining the initial owner of a copyright, a court must look to the law of the country in which the work originated.").

Accordingly, the inconvenience to Plaintiff in litigating its claims in Canada pales in comparison to the inconvenience to Defendants of litigating in New York.

### III.   The Second Amended Complaint Does Not State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)

In assessing a motion to dismiss a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), courts will accept all well-pled material allegations of fact conveyed in the claim as true, and will construe all factual inferences in the nonmoving party's favor.  See, e.g. Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003).  Bald legal conclusions, however, are not entitled to any such deference; courts will not "credit . . .  conclusory statements without reference to its factual context."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1954 (2009).  Although "a [claim for relief] does not need detailed factual allegations, a [claimant's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. . ."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Where a foundation in fact is lacking, the claimant falls short of its duty to "[nudge its] claims across the line from conceivable to plausible [and the claims] must be dismissed" Id. at 570.

Here, Plaintiff's pleading is a series of conclusory allegations that are woefully deficient to assert any cognizable claim as against the Defendants.

### A.   Plaintiff Fails to Identify the Specific Works that Are the Subject of Its Claim for Copyright Infringement as to Each Specific Defendant

### 1)   Plaintiff's Allegations in the Second Amended Complaint Are Self-Serving and Directly Contradict the First Amended Complaint

In the FAC, Plaintiff alleged that it owns "*certain* episodes" of "*certain* original television programs that are shown on Russian language television."  FAC ¶18 (emphasis added).   Plaintiff's allegations could not have been any clearer:  Plaintiff alleged that it does not own the *entire* program series, but rather a *subset* consisting of "*certain* programs."

In a marked departure from the FAC, Plaintiff now alleges that it owns "*all* single productions and recurring episodes" of the programs it lists in its pleading.[16]  SAC ¶10.  Plaintiff is patently

---

[16] Plaintiff further alleges that these episodes/programs were produced prior to December 31, 2016, but does not allege whether *any* episodes of the ten programs Plaintiff lists were produced by Red Square subsequent to that date.  SAC ¶10.

attempting to change its statement of facts to facilitate an argument that it does not need to list the episodes in question because it owns "all" of them.[17]

"Where a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" Colliton v. Cravath, Swaine & Moore LLP, No. 08-CV-400, 2008 U.S. Dist. LEXIS 74388, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (alterations omitted) (quoting Wallace v. N.Y.C. Dep't of Corr., No. 95-CV-4404, 1996 U.S. Dist. LEXIS 22368, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)), aff'd, 356 F. App'x 535 (2d Cir. 2009); see also Dozier v. Deutsche Bank Trust Co. Ams., No. 09-CV-9865, 2011 U.S. Dist. LEXIS 100467, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations."). Accordingly, given that ownership of *some* episodes, as opposed to *all* episodes, are two vastly different claims of ownership, this Court should accept Plaintiff's allegation in the FAC as true.[18] Plaintiff needs to specifically describe what it owns, and it has not done so either in the FAC or the SAC.

### 2) Plaintiff's Pleadings Fail to Identify the Works at Issue and Which Specific Defendant Infringed What Specific Works

Plaintiff alleges that "all of the Copyrighted Content originally vested upon creation in Red Square" (SAC ¶13), and that "[a]ll exclusive rights in the Copyrighted Content were, in accordance with Russian law, transferred to Komanda after the works were created and such transfers have occurred ***on a regular basis***." SAC ¶11.

Except that Plaintiff does not allege when those transfers occurred, nor does it allege which specific episodes or programs were included in each specific transfer, nor does Plaintiff allege which

---

[17] As discussed further below, however, Plaintiff's allegations in its Second Amended Complaint still fail to properly identify the specific works at issue – even if it purportedly owns "all" of the episodes in question.

[18] Nor could one argue that circumstances have changed since Plaintiff's First Amended Complaint, filed on May 29, 2017, and Plaintiff's Second Amended Complaint, filed on October 6, 2017, since Plaintiff concedes that the last transfer between Red Square and Plaintiff purportedly occurred on February 1, 2017. SAC ¶15. Accordingly, Plaintiff had the same rights in May as it did in October, when the Second Amended Complaint was filed.

specific episodes were produced prior to "December 31, 2016," nor does Plaintiff attach, quote or reference the specific transfer agreements at issue purportedly transferring such rights, nor does Plaintiff allege when such transfers occurred vis-à-vis the original air date on "Russian language television" or whether (since Plaintiff deliberately does not characterize this as a copyright *assignment*) any rights were specifically withheld by Red Square LLC ("Red Square").

Plaintiff alleges that the last of such transfer agreements occurred "on February 1, 2017" (SAC ¶15) and that it included "53 episodes of Let's Get Married"[19] and "other content, including all 10 of the programs that comprise the Copyright Content." SAC ¶¶15-16. Despite its apparent ability to reference a specific number of episodes, Plaintiff is fundamentally unable to identify each such episodes, nor does it identify any episodes included in that transfer from the other ten programs "that comprise the Copyright Content." Nowhere in the SAC does Plaintiff allege any additional information with respect to any other specific transfers that presumably occurred prior to February 1, 2017.

In paragraph 26 of its SAC, Plaintiff lists the infringement date and identifies certain episodes of certain programs that were purportedly infringed by Defendants, but wholly omits to allege how/when it acquired the rights to each such episode. SAC, ¶26. Furthermore, while Plaintiff alleges one transfer pertaining to "53 episodes of Let's Get Married" (without naming each episode at issue), Plaintiff fails to allege when/how any episode of Let's Get Married was ever infringed by which specific defendant.

A properly pleaded copyright infringement claim must allege, *inter alia*, which specific original works are the subject of the copyright claim. Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992). It is "inadequate to base an infringement claim on overly-inclusive lists of copyrighted works," and "it is also insufficient to list certain works that are the subject of an infringement claim, and then allege

---

[19] Plaintiff translates Let's Get Married as *Davai pogenimsya*. SAC ¶14.

that the claim is also intended to cover other, unidentified works." Cole v. John Wiley & Sons, 2012 U.S. Dist. LEXIS 108612, *34 (S.D.N.Y. 2012) (granting motion to dismiss copyright claims when plaintiff provided a chart listing 66 photographs, but failed to identify which photographs were the subject of his copyright infringement claims, and further alleged that the infringement was "not limited to the photographic works identified"); see also Lambertini v. Fain, 2014 U.S. Dist. LEXIS 131390, 2014 WL 4659266, at *3 (E.D.N.Y. Sept. 17, 2014) ("Plaintiff has the burden of identifying the specific works at issue in her pleading"); Master Sound Int'l, Inc. v. PolyGram Latino U.S., 1999 U.S. Dist. LEXIS 6287, 1999 WL 269958, at *2 (S.D.N.Y. May 4, 1999) ("in order to state a claim Master Sound must identify the specific works at issue . . . to establish its ownership of a valid copyright under Mexican law").

While Defendants are cognizant that in certain circumstances – not extant here – this rule has been relaxed to accommodate a large volume of works claiming to have been infringed.  Indeed, in Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC et al, 2017 U.S. Dist. LEXIS 22548 (S.D.N.Y. 2017), this Court noted that "non-exhaustive" examples are appropriate where a copyright plaintiff alleges "that defendants unlawfully copied or retransmitted all or substantially all of their television programming." Id. at *35.  In support of this proposition, the Court took the unusual step of referencing pleadings filed by various well known U.S. television broadcasters against Internet TV service providers – most notably, the now defunct Aereo.  Id.

Reliance upon Joint Stock for this proposition, however, is deeply misguided in the present instance.[20]  For one thing, Plaintiff appears to get its rights through periodic transfers from Red Square,

---

[20] Indeed, the Court in Joint Stock took great pains to illustrate that a "non-exhaustive" list still means a substantial list naming the television show, the air date, channel and copyright owner.  See, e.g., Compl., WPIX, Inc. v. ivi, Inc., No. 10-CV-7415 (S.D.N.Y. Sept. 28, 2010) (providing a "non-exhaustive list of . . . television programs, identifying representative examples of programs in which plaintiffs . . . own the pertinent copyright interests" and attaching as an exhibit a list of **96 episodes** of a variety of specifically-named television shows and sports broadcasts including each episode's air date, the channel on which it aired, and the copyright owner)(emphasis added); Compl., Am. Broad. Cos., Inc. v. AEREO, Inc., No. 12-CV-1540 (S.D.N.Y. Mar. 1, 2012) (providing a "non-exhaustive list of . . . television programs, identifying representative examples of programs in which plaintiffs own the pertinent copyright interests" and attaching an exhibit listing **44 episodes** of a variety of named television shows, including each episode's air date, channel, and copyright

who Plaintiff alleges is the original copyright owner.  Plaintiff must therefore properly plead that transfer and provide a plausible chain of title as to each specific copyrighted work at issue – which it does not.  See Quinn-Brown Publishing Corp. v. Chilton Co., 15 F. Supp. 213, 214 (S.D.N.Y. 1936) ("And, in pleading a case of infringement, the plaintiff must show title, not merely by broad allegation of proprietorship, but by setting forth facts which indicate how he became proprietor.").  Furthermore, unlike plaintiff in Joint Stock, Plaintiff does not claim to be the owner or the beneficial owner of "all or substantially all" of Channel One's television programming – the Russian television channel that Plaintiff claims originally broadcast Plaintiff's "Copyrighted Content."  Nor does Plaintiff claim to be a television broadcaster like Channel One, nor does it claim to be the producer of the "Copyrighted Content."  Plaintiff appears to be the owner of ***merely ten programs***, some of which (Plaintiff does not plead which ones) appear to be "single productions" – in other words, the program itself does not have recurring episodes (e.g. a documentary).

Plaintiff is held to no lesser pleading standard than a United States litigant with a United States copyright registration just because it alleges to have a foreign copyright.  See 17 U.S.C. §104(c) ("[a]ny rights in a work eligible for protection under this title . . . shall not be expanded or reduced by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto"); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 91 (2d Cir., 1998) ("[u]nder United States law, an owner (including one determined according to foreign law) may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. 501(b), which accords standing only to the legal or beneficial owner of an 'exclusive right'").

Plaintiff must still plead ownership, the date when it acquired the rights to specific programs and episodes at issue through Red Square, specifically identify which specific episodes and programs

---

owner)(emphasis added); Compl., WNET v. AEREO, Inc., No. 12-CV-1543 (S.D.N.Y. Mar. 1, 2012) (providing a "non-exhaustive list identifying representative samples of . . . television programs" describing **94 episodes**, including air dates, channels, and copyright owners)(emphasis added).

were transferred pursuant to which particular agreement, and when each such episode and/or program was infringed, and by which specific Defendant.  Plaintiff is ready to haul into a New York court foreign entities based upon scant jurisdictional allegations, and does not plead what specific copyrighted works are allegedly infringed by which specific defendant.  Plaintiff's allegations are insufficient to state a claim against Defendants and should therefore be dismissed.

**B.     Plaintiff's Claim Pursuant to DMCA 17 U.S.C. §512(f) for Misrepresentation Fails to Plead a Plausible Cause of Action**

Plaintiff alleges that it is entitled to damages pursuant to 17 U.S.C. §512(f) because Defendants purportedly made certain misrepresentations in the Counter-Notice and Corrected Counter-Notice. FAC ¶¶92-98.

17 U.S.C. §512(f) provides in relevant part the following:

> Any person who knowingly materially misrepresents under this section . . . that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by . . . any **copyright owner** . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation . . . **in replacing the removed material or ceasing to disable access to it**.

See 17 U.S.C. §512(f) (emphasis added).

As an initial matter, Plaintiff's inability to properly identify what works it purportedly owns is fatal to its claim pursuant to §512 as it cannot establish that it is a "copyright owner" – as the statute requires.  Furthermore, Plaintiff concedes that after Defendants submitted the Counter-Notice, "Roku, pursuant to 17 U.S.C. §512(g)(2)(c), continued to block access to BRT."  FAC ¶41.  In other words, the service provider (i.e. Roku) never replaced the removed material or ceased to disable access to it, which is what the plain language of the statute patently requires in order for Plaintiff to claim damages.  Accordingly, Plaintiff fails to plead a cognizable cause of action under 17 U.S.C. §512(f).[21]

**C.     Plaintiff's Secondary Copyright Infringement Claim Fails to Plead a Plausible Cause of Action**

---

[21] Furthermore, the crux of Plaintiff's grievance is not §512(f) but rather that Defendants *perjured* themselves. Defendants do not concede any misrepresentation, and in fact, vigorously deny it.  Should this matter move forward, Plaintiff's allegation will be addressed in due course.

Plaintiff alleges that that the "Infringing Defendants" are liable for secondary copyright infringement. FAC ¶¶83-91. "In order to establish liability for contributory or vicarious copyright infringement, a plaintiff must first prove that direct infringement of its works occurred by showing that it owned a valid copyright and unauthorized infringement of its protected material occurred." Laine v. Pride, 2010 U.S. Dist. LEXIS 3657, at *21 (S.D.N.Y., 2010). Plaintiff's inability to plead a plausible copyright infringement claim is therefore fatal to any claim for secondary copyright infringement for that reason alone.

Furthermore, Plaintiff's allegations of secondary copyright infringement are indistinguishable from its direct infringement claims. Plaintiff recycles the exact same allegations and recasts them as secondary copyright infringement, merely reciting the prongs to the judicially created doctrine.  To state a claim for contributory copyright infringement, a plaintiff must allege that a defendant (1) "with knowledge of the infringing activity" (2) "induces, causes, or materially contributes to the infringing conduct of another." Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, at 432, 434 n.23 (S.D.N.Y., 2011) (quoting Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). To establish inducement of copyright infringement, a plaintiff must show that a defendant "(1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement." Lime Grp. LLC, 784 F. Supp. 2d at 425. To state a claim for vicarious infringement, a plaintiff need only allege: (1) "that a defendant has declined to exercise the right and ability to supervise or control the infringing activity," and (2) that the defendant "enjoys a direct financial benefit from the infringing activity." Rams v. Def Jam Recordings, Inc., 2016 U.S. Dist. LEXIS 111803, 2016 WL 4399289, at *4 (S.D.N.Y. 2016) (citing MGM Studios, Inc. v. Grokster, Ltd., 545 U.S. 913 at 930 (2005)).

Assuming Plaintiff's allegations are true, Plaintiff's pleadings just do not make sense. Plaintiff is not alleging facts in the alternative, but rather imposing another legal standard on the same set of facts. Plaintiff's circular reasoning appears to be that hosting companies and/or consumers are direct

infringers by streaming/hosting content from Defendants' purported websites – and as a result Defendants are secondarily liable. A direct infringer cannot be secondarily liable as a result of another party's secondary liability caused by the direct infringer's infringement. If that were the case, every direct infringer would automatically be secondarily liable if any other party also had secondary liability. Plaintiff's claim of secondary copyright infringement is duplicative and implausible, and should be dismissed accordingly.

**D.     Plaintiff's Claim Pursuant to State Law Is Not a Cognizable Cause of Action**

Plaintiff brings a claim against Defendants for violation of New York General Business Law §349. According to Plaintiff, Defendants "deceived consumers and paying customers in New York into believing that they have the legal right, authority, or authorization to stream, broadcast, or otherwise distribute Plaintiff's Copyrighted Content." FAC ¶109. As an initial matter, Plaintiff brings this claim without bothering to plead fact-specific non-conclusory allegations, with respect to each particular defendant, alleging who did what, when and where – and on this ground alone, Plaintiff's state based claim is patently deficient.

Furthermore, while a private right of action exists under GBL §349, it exists primarily as a consumer protection statute. See LBB Corp. v. Lucas Distrib., 2008 U.S. Dist. LEXIS 53752 (S.D.N.Y. 2008). "[C]orporate competitors . . .have standing to bring a claim under [section 349] so long as some harm to the public at large is at issue." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (quoting Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 786 F. Supp. 182, 215 (E.D.N.Y., 1992), vacated in part on other grounds, 973 F.2d 1033 (2d Cir. 1992)). However, "'the gravamen of the complaint must be consumer injury or harm to the public interest.' The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." Id. (quoting Azby Brokerage, Inc. v. Allstate Ins. Co., 681 F. Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)).

Where, as here, the only harm alleged is confusion amongst consumers, where the public is deceived and confused into believing that a defendant's actions are endorsed or authorized by plaintiff, then no public harm has been alleged. See LBB Corp. v. Lucas Distrib., 2008 U.S. Dist. LEXIS 53752, *8 (S.D.N.Y. 2008). "Courts in this district have repeatedly rejected attempts to use section 349 where the Complaint essentially alleges harm to a corporate competitor, not the public at large." Id.

Accordingly, Plaintiff's Fifth Cause of Action should be dismissed against Defendants as well.

## E.    Plaintiff's Claim Pursuant to DMCA 17 U.S.C. §1201(a)(1) for Unlawful Circumvention Fails to Plead a Plausible Cause of Action

Plaintiff alleges that the "BRT Defendants" are liable for unlawful circumvention under 17 U.S.C. §1201(a)(1).

Section 1201(a)(1) of the DMCA is an anti-circumvention provision which provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."   17 U.S.C. §1201(a)(1).   "To 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. §1201(a)(3)(A).   In the context of the DMCA, a person "circumvents a technological measure" only when "he affirmatively performs an action that disables or voids the measure that was installed to prevent them from accessing the copyrighted material." LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015) (quoting Dish Network LLC. v. World Cable Inc., 893 F. Supp. 2d 452, 466). This act "can be characterized as 'breaking and entering (or hacking) into computer systems.'" LivePerson, 83 F. Supp. 3d at 509 (quoting I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004)); Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, No. 16-CV-1318 (GBD) (BCM), 2017 U.S. Dist. LEXIS 22548, at *48-49 (S.D.N.Y. Feb. 15, 2017).

Section 1201(a)(1)(A) "aims against those who engage in unauthorized circumvention of technological measures . . . [It] focuses directly on wrongful conduct, rather than on those who facilitate wrongful conduct . . ." Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 319 (S.D.N.Y. 2000) (quoting 1 Nimmer §12A.03[A], at 12A-15 (1999 Supp.)).

Furthermore, "unauthorized" access does not refer to permission of the copyright holder, but whether the technological access to the signals was by authorized *means* or evasion technology. See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F.Supp.2d 521, 532–33 (S.D.N.Y.2004) (holding that the DMCA anticipated circumvention of a "technological measure *qua* technological measure", and therefore simply bypassing "permission to engage and move through the technological measure from the measure's author" did not fall within the statutory definition of circumvention and therefore because the defendant "did not surmount or puncture or evade any technological measure" but instead "used a password intentionally issued by plaintiff to another entity," there was no "circumvention" under section 1201(a)(1)).

Plaintiff alleges that the BRT Defendants purportedly used Roku's "developer mode" to essentially communicate with their subscribers so that such subscribers could view the infringing content outside of the confines of the Roku Channel Store. SAC ¶¶99-106. Plaintiff further alleges that use of the developer mode in that fashion is "a violation of Roku's terms of use." SAC ¶102.

Plaintiff does not plead that Defendants having a developer account at Roku is improper. On the contrary, Plaintiff pleads that Defendants had a developer account, and that Roku was fully aware of it and that this was nothing out of the ordinary since Roku apparently communicated with Defendants in that fashion. SAC ¶37 (alleging that Roku communicated Plaintiff's takedown notice through Defendants' "developer account" at Roku).

Plaintiff also does not plead that Defendants "hacked" into the Roku Channel Store so as to enable subscribers to access the purportedly infringing content through the Store, nor does Plaintiff plead that Defendants provided subscribers a tool to "hack" into the Roku Channel Store. On the

25

contrary, Plaintiff alleges that Defendants enabled subscribers to access BestRussianTV.com content through Defendants' developer account at Roku.

This does not constitute anti-circumvention in violation of section 1201(a)(1).[22]  Rather, what Plaintiff pleads, at best, is a purported violation of Roku's terms of use for an otherwise perfectly permissible developer account at Roku.  Accordingly, Plaintiff's anti-circumvention claim must fail as well.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) and dismiss the Second Amended Complaint as against Defendants in its entirety.

Dated:   October 27, 2017
New York, New York

Respectfully submitted,
MEDENICA LAW PLLC

Olivera Medenica
3 Columbus Circle, 15th Floor
New York, NY 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
Email: Omedenica@medenicalaw.com

*Attorneys for Defendants Kartina Canada, Inc., and Online Ethnic TV Services, Inc.*

---

[22] Even assuming that Plaintiff had alleged that Defendants enabled subscribers to "hack" into the Roku Channel Store, at best, this would merely amount to *facilitating* wrongful conduct.  Section 1201(a)(1)(A) focuses on wrongful conduct, rather than on those who facilitate wrongful conduct.  Only defendants who use circumvention devices may be subject to liability under §1201(a)(1).  DISH Network L.L.C. v. World Cable Inc., 893 F. Supp. 2d 452, 455 (E.D.N.Y. 2012).