UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOMANDA LLC,<br><br>                     Plaintiff,<br><br>v.<br><br>KARTINA CANADA INC.; ONLINE ETHNIC TV SERVICES, INC.; NASH DOM, INC.; GENNADY BEYN; an individual; and JOHN DOES 1 through 10,<br><br>                     Defendants. | Case No.: 17-cv-2362 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NASH DOM, INC.'s MOTION TO DISMISS

Dated: October 27, 2017

                            Respectfully submitted,

                            LAW OFFICE OF ROBERT L. GREENER P.C.
                            112 Madison Avenue, 6th Floor
                            New York, NY 10116
                            Phone: 646.415.8920
                            Fax: 212.689.9680
                            rlg@greenerlegal.com
                            *Counsel for Nash Dom, Inc.*

## **PRELIMINARY STATEMENT**

Defendant Nash Dom Inc.(Nash Dom) brings this motion seeking dismissal of the Second Amended Complaint(SAC) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) as to copyright infringement, secondary copyright infringement, and unfair and deceptive trade practices on the grounds of insufficient pleading, and failure to state a claim upon which relief can be granted against Defendant Nash Dom Inc. The SAC annexed as Exhibit "A"

Defendant Nash Dom moved to have the Frist Amended Complaint (FAC) dismissed on the same grounds herein. Defendant's Memorandum of Law in Support is attached as Exhibit "B" as Defendant incorporates many of the same arguments in support of this application. This Court by Order dated, 2017 had granted the application to the extent that Plaintiff was directed to file a Second Amended Complaint to correct the prior pleading's deficiency's in establishing standing to under 17 U.S.C. 501(B); That Order is attached as Exhibit "C".

Judge Forrest's September 21, 2017 Order, required the Plaintiff to replead its Complaint and to comply with the Court's directive to specifically included three distinct factual elements missing from the FAC:

"1.     Allege plausible facts regarding Plaintiff's ownership of specific, enumerated copyrights for which Plaintiff is seeking relief in this action;
2.      Allege specific, plausible facts regarding the particular copyrighted works that each individual defendant is alleged to have infringed, including how and when the infringement allegedly occurred;
3.      Allege specific, plausible facts regarding the Court's jurisdiction over each individual defendant named in this action."

As will be shown further on below, Plaintiff has failed to Comply with the Order, in that they did not allege plausible facts regarding ownership of specific enumerated copyrights, or, regarding

1

the particular works infringed including when and how infringed. They also did not allege how they hove subject matter jurisdiction over Nash Dom.

Defendant Nash Dom now brings this second motion to dismiss the SAC. Even after three opportunities to set forth its ownership or exclusive rights over the copyrighted material, Plaintiff still cannot do so. This new complaint is even more confusing than the prior one. Plaintiff cannot seem to be able to set forth the particulars as to how they own the rights to the copyrighted material, and which ones they own in clear and straight forward language. The language in SAC, has changed, but the SAC still has not made the ownership of the allegedly infringed works any clearer. Nor, has Plaintiff set out with specificity which episodes Defendant Nash Dom has allegedly infringed, or if an episode owned by Plaintiff and on what date. Finally, Plaintiff has utterly failed to allege with any particularity how Nash Dom was involved with any of the alleged infringing conduct with Roku.

## ARGUMENT

### I. IN THE SAC, PLAINTIFF HAS FAILED TO ALLEGE WITH SPECIFIC PARTICULARITY EITHER OWNERSHIP OF THE COPYRIGHTED MATERIAL OR EXCLUSIVE RIGHTS TO THE MATERIAL, AS REQUIRED UNDER SECTION 501(B) OF THE COPYRIGHT ACT.

In cases of international copyright infringement, United States standing rules still apply. See, Itar–Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 91 (2d Cir.1998). Because United States law only permits suit by owners of "an exclusive right under copyright," 17 U.S.C. § 501(b), the Court must first determine whether Plaintiff owns an exclusive right. In such transnational disputes, however, the "ownership and essential nature of the copyrights alleged to have been infringed" is determined by the law of the country with the most significant relationship to the property and parties, although "United States law determines whether those copyrights have

been infringed in the United States and, if so, what remedies are available." Id.

The Second circuit made it clear that only two types of parties have standing to sue for copyright infringement "(1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 32 (2d Cir.1982). Ownership as outlined in the SAC, is convoluted at best and lacks supporting documentation to establish that Plaintiff has exclusive worldwide rights to the specific episodes it alleges Defendants infringed.

Once again, the SAC states that ownership is over only 'certain episodes' of Russian language television programming allegedly transferred to Plaintiff, and again fails to identify which ones. Plaintiff has identified a new party, Red Square LLC, ostensibly as the producer of these episodes. Supposedly Red Square is the party who has transferred the rights to Plaintiff. However, the SAC does not state directly if that is so, and in what way those rights were transferred, or what was transferred to Plaintiff and when.

Instead of just identifying the terms of its license agreement, the episodes covered, the parties and the dates, Plaintiff presents convoluted details which obscure who owns what and when they owned it. For example, in ¶14 is a mess. Plaintiff puts forth an analysis as to who were the producers on the TV Show "Let's Get Married". The paragraph's narrative is very confusing. Are the individual producers mentioned in that paragraph the owners of the works or not? Was this a work for hire? Does Plaintiff get its right from the individuals mentioned or directly from Red Square? And, if directly from those individuals identified, do they have the rights from Red Square to give Kommanda? In its deal with Channel One, does Red Square even have the rights to give to

3

Kommanda or does Channel One have the exclusive rights to distribute internationally? Finally, are the people identified in the paragraph the creators of all 53 episodes Plaintiff claims rights to?

While the Complaint in ¶16 claims that 277 episodes of these shows were transferred to Plaintiff, only one episode, Let's Get Married" is actually identified in that paragraph. The only other place where other episodes claimed to have been infringed are identified, is in paragraph 26 none of which are 'Let's Get Married. ¶26, also identifies these programs only as they relate to infringement by the BRT defendant, and not Nash Dom.

Taking the allegations that somehow those programs set out in ¶16 were broadcast by Nash Dom as true for the purposes of this motion, Plaintiff fails to allege with requisite specificity ownership or exclusive rights over the specific episodes. Plaintiff's pleading does not allege the particulars as to the terms though which Kommanda allegedly acquired the rights, except for the self-serving statement that Red Square, or those who work for Red Square, gave exclusive rights to Kommanda. No details are given as who, what, and when the agreements were signed. Further confusing the situation in ¶15 and 16 Plaintiff admits there were numerous agreements that were signed without identifying what shows were covered by which agreement. No information is set forth as to what territory is covered, or whether there is exclusivity in them and for how long.

Given that this is the third time that Kommanda had to refile its complaint, one would assume that such important details would have been plead to avoid the filing of yet another motion to dismiss. Instead, Plaintiff plays fast and loose with this Court, intentionally obscuring the important details which support their claims regarding standing. Failing to come forward with such specifics is fatal to Plaintiff's standing to bring the copyright infringement action.

4

17 U.S.C. 501(b) states "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it.". It is well established in this district that to determine if a license transfers exclusive rights sufficient to established standing, the Court must look to the substance of the contract and not 'labels' given by the parties. See, John Wiley & Sons, Inc. v. DRK Photo, 998 F.Supp.2d 262, 280 (S.D.N.Y. 2014)("When determining whether an agreement confers standing, courts look to "the substance of the agreement, not the labels it uses"). Plaintiff vaguely states that its rights were transferred by "written instruments" which were "regularly executed", SAC ¶15. However, absolutely no information is given as to the nature of these instruments.

That Plaintiff is claiming that they have rights through operation of Russian Law, does not excuse them from supplying the specifics to assert those rights and to supply some evidence of the existence of the writings it claims exist, other than its self-serving unsupported statements. See, Wallert v. Atlan, 141 F.Supp.3d 258e, 277(S.D.N.Y. 2015) a similar Southern District Case("Wallert does not allege the existence of, let alone supply, any such written documents... Rather, the FAC merely alleges that Wallert is the successor in interest to all of Moonstruck's rights. ...But in his opposition to the motion to dismiss, Wallert does not challenge the Universal defendants' argument, which the Court finds persuasive, that the FAC inadequately pled his claim to be a successor in interest".).

## II.   PLAINTIFF HAS NOT IDENTIFIED WITH PARTICULARITY THE COPYRIGHTS IT OWNS, AND SO ITS COMPLAINT MUST BE DISMISSED.

To survive dismissal, the complaint must allege: "(1) which specific original works are the subject of the copyright claim, (2) that Plaintiff owns the copyrights in those works, (3) that

5

the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." Energy Intelligence Group, Inc. v. Jefferies, LLC, 101 F.Supp.3d 332 (S.D.N.Y. 2015)

The SAC not only fails to identify how Kommanda acquired the rights and from who, but it also failed to comply with this Court order and set forth the particulars of the episodes of the which shows they claim own rights to. By their own admission in the FAC there are only "certain shows" that Plaintiff owned rights to.[1] In the SAC they identify a potential of 277 but do not state with specificity in its Complaint which ones are owned, if any. Plaintiff states in the most basic generalized terms that the copyright content was obtained through numerous contracts.[2], but Plaintiff identifies only one contract and does not state the title of the show it acquired, or the terms of the rights to the episode.

The Court herein required Plaintiff to identify at least specific copyrights infringed, which they utterly failed to do. "A Plaintiff may fail to meet this requirement if the Complaint "bases an infringement claim on overly-inclusive lists of copyrighted works" that amount to "vague and expansive allegations regarding which works are the subject of [p]laintiff's claims." Cole v. John Wiley & Sons, Inc., 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (dismissing copyright infringement claims where Plaintiff provided multiple pages of charts and spreads listing works licensed to defendant but alleging neither that all the copyrights were infringed nor any specific one was…".

---

[1] FAC ¶'s 2 and 10.
[2] SAC ¶'s 10, 11, and 15

6

In ¶ 47, Plaintiff claims that on August 14, NashDomTV made 13 episodes of the program Bez strakhovki (Без страховки), available for broadcast. However, nowhere in the SAC does Plaintiff claim to own any or is the assignee of episodes of this particular program, only that Red Square LLC does. Plaintiff also fails to allege which programs and at what time those programs were aired by Nash Dom directly as opposed to BRT or any other named or unnamed defendant. "Direct liability requires 'volitional conduct' that 'causes' the infringement." Wolk v. Kodak Imaging Network, Inc., 840 F.Supp.2d 724, 742 (S.D.N.Y.2012) (citing Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir.2008)), aff'd sub nom. Wolk v. Photobucket.com, Inc., 569 Fed.Appx. 51 (2d Cir.2014) (summary order). See also, Arista Records LLC v. Usenet.com, Inc., 633 F.Supp.2d 124, 148 (S.D.N.Y.2009)("To be liable for direct infringement, a defendant must have "engaged in some volitional conduct sufficient to show that [it] actively" violated one of the Plaintiff's exclusive rights.").

**POINT III.  PLAINTIFF HAS ALLEGED only 'BARE BONES' ALLEGATIONS OF DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST DEFENDANT NASH DOM INC.; AND, THEREFORE, THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AND SHOULD BE DISMISSED AS AGAINST IT.**

Unlike copyright ownership issues, which may be governed by foreign law, "the law of the jurisdiction where the allegedly infringing acts take place generally governs infringement issues." See, Creazioni Artistiche Musicali, S.r.l., 2016 WL 7507757, at *3., and also *Inter-Tass*, supra. Under U.S. copyright law, and in this district, Plaintiff must set out the actual infringing acts and not rest on speculative 'bare bones' allegations of such infringement. "[A] Plaintiff alleging copyright infringement "may not rest on bare-bones allegations that infringement occurred," but instead must set out the "particular infringing acts ... with some specificity." Jacobs v. Carnival Corp, Not Reported in F.Supp.2d 2009 WL 856637, at *4 (SDNY 2009).

The Court in its September 21st Order, directed Plaintiff to specifically identify facts that support its claims to jurisdiction over the defendants. Plaintiff is still not in compliance. Section E of the SAC sets forth the allegations against Defendant Nash Dom which is the basis for its direct copyright infringement claims. The allegations in the SAC again misleadingly lumps Nash Dom Inc. with nashdomtv.com and the four Roku stations, NASHDOM, IPTVHUB, MYRT and TVHUB (and BRT), then labels them the "Nash Dom Defendants". However, only Nash Dom Inc. is a named defendant.

In this regard, there is nothing in the Complaint that states the Nash Dom directly infringed the Plaintiff's Copyrights. Plaintiff asserts without any factual support that Nash Dom and NashDomTV are connected.[3] The sole support for the claim that Nash Dom is distributing the copyrighted content is an ISP address given in paragraph ¶ 47. However, Plaintiff admits that this ISP address is registered to Connection Networks LP, a Scottish based corporation having no connection with Defendant Nash Dom.

By misleadingly lumping all 6 of these alleged defendants together, Plaintiff is giving the appearance that these defendants are individual entities somehow acting in concert together to violate its rights. Plaintiff fails to connect these separate entities, and how there are connected to Nash Dom Inc. There is no statement of unity of ownership, operations, control or at least similar business addresses- nothing except self-serving speculative conclusions by the Plaintiff.

Plaintiff in ¶ 43 and 44 states that NashdomTV.com. runs a streaming service that infringes the Plaintiffs rights because it enables viewers to see the content without its consent or license.

---

[3] SAC ¶'s 45-48.

8

However, except for a conclusory inference by Plaintiff, the Complaint utterly fails to state how Nash Dom Inc. is the owner or controls the nashdomtv.com website. It has failed to show that Nash Dom Inc. has control over the alleged initial or secondary infringing acts, except for the similarity of the name 'Nash Dom'.

Plaintiff has also alleged that Nash Dom Defendants operate a streaming service and on-demand library on the nashsdomtv.com site. Again, Plaintiff fails to show the source of this allegation. Plaintiff has not identified any servers or hosting that is provided by Nash Dom Inc. for this service, or connected Nash Dom with Connection Networks. It is the type of unsupported speculative statement which has been rejected by this District. <u>Brought to Life Music, Inc. v. MCA Records, Inc.</u>, Not reposted 2003 WL 296561, *1 (S.D.N.Y. Feb.11, 2003);

FAC ¶'s 44 set forth general conclusory claims of infringement without citing when and how many times the TV Episodes Plaintiff claims to own were broadcast. Paragraph 30 states that the Nash Dom Defendants distribute Russian Language programming that subscribers pay $10 to $35 per month to view. This alone is not infringement of Plaintiff's rights. If as stated in FAC ¶ 31, Nash Dom did distribute such programing, without displaying any of the allegedly owned episodes, it would not be infringing conduct. The fact that nashdomtv.com may allow viewers to watch Modny Prigovar and Davai Pogenimsaya is not in and of itself a violation of Plaintiff's rights as Plaintiff does not claim to own all the rights to the programing. Plaintiff fails to state which of the episodes were aired without consent by Nash Dom defendants, again using only the euphemism "for example" which specifies nothing.

Plaintiff's expert report and take down notice do not save Plaintiff from its failure to

9

properly plead infringement. They are the same ones submitted in the FAC and have not corrected the original flaws. The Roku Takedown Notice (the Notice) in Exhibit 5 to the SAC identifies as another IP Owner of the subject content, NTV America, who is missing from this case.[4] In section 2, the Notice only states that Plaintiff's agent has a 'good faith belief' that the content is being infringed without identifying the basis to this belief. The Notice refers to the attached letter of David Liston Esq. for more support. However, that letter is bereft of any information which identifies the owned content or the basis for its ownership under Russian Law.

Finally, the investigative report of the aptly named Jeffery Moscow states only that he obtained a pass to the nasdomtv.com channel and watched a single episode of Modny Prigovar on March 23, 2017, and of Davai Pogenimsaya on March 24, 2017. The report does not state that these two episodes were the ones owned by Plaintiff. The report fails to make out any allegation of infringement what so ever. Further, Mr. Moscow's report failed to show a legal ownership by or control over the Roku channel by Nash Dom Inc. except in the similarities of the name.

## CONCLUSION

For all of the reasons stated above, the FAC should be dismissed as against Defendant Nash Dom Inc., along with what other and further relief this Court deems just and appropriate.

Dated: October 27, 2017,

                        Respectfully submitted,
                        S/ROBERTL. GREENER/S
                        Robert L. Greener (RG8089)
                        LAW OFFICE OF ROBERT L. GREENER P.C.
                        112 Madison Avenue, 6th Floor
                        New York, NY 10118
                        Phone: 646.415.8920
                        *Counsel for Defendant Nash Dom Inc.*

---

[4] Most of the Investigators report contained in Exhibit 5 to the FAC is redacted, and thus appears to relate to programing which is owned by NTV America and not to Plaintiff. No explanation of the relationship between the two entities is stated in the report or the Attorney's letter in support.